**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TRUSTEES OF THE BAC LOCAL 23 NORTH SHORE CHAPTER PENSION FUND, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DIPAOLA MASONRY, LLC, *et al.*,<br><br>Defendants. | ) | Case No. 1:25-cv-2055<br><br>Judge J. Philip Calabrese<br><br>Magistrate Judge Reuben J. Sheperd |

## OPINION AND ORDER

On May 28, 2026, the Court entered a default judgment against DiPaola Masonry, LLC and Giovanni DiPaola. (ECF No. 23.) Following proceedings for an audit, Plaintiffs filed an amended motion for default judgment, including damages and attorneys' fees and costs, on October 13, 2026. (ECF No. 28.) For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion for this relief and **AWARDS** Plaintiffs damages, attorneys' fees, and certain costs, for a total judgment of $75,941.08.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 26, 2025, Plaintiffs sued Defendants for breach of the Masonry Industry Agreement and collective bargaining agreements between them and for violating various provisions of the Employee Retirement Income Security Act and Labor Management Relations Act. (ECF No. 1.) The complaint alleges the following facts, which the Court takes as true.

Plaintiffs are the Bricklayers and Allied Craftworkers Local No. 23 Union, the Union's Pension Fund, and other various third-party beneficiary ERISA Funds and Union Funds. (*Id.*, ¶ 4–12, PageID #3–4.) Local 23 is a labor organization that maintains its principal office in Amherst, Ohio. (*Id.*, ¶ 13, PageID #4.) The ERISA Funds and Union Funds maintain operation and administration of their funds in the Village of Valley View, Ohio in Cuyahoga County. (*Id.*, ¶¶ 19 & 24, PageID #5 & #6.) Defendant DiPaola Masonry maintains its principal place of business in Ohio. (*Id.*, ¶ 15, PageID #4.) Defendant Giovanni DiPaola is the owner of DiPaola Masonry and is a resident of Ohio. (*Id.*, ¶ 17.)

At all relevant times, DiPaola Masonry was subject to the Masonry Industry Agreement, of which the Union and Union Funds are third-party beneficiaries. (*Id.*, ¶¶ 23 & 28, PageID #5 & #7; *see* ECF No. 1-3.) The Masonry Industry Agreement requires DiPaola Masonry to abide by the wages, benefit contributions, and working conditions set forth in any local collective bargaining agreements covering work in an area where DiPaola Masonry performs work. (*Id.*, ¶¶ 28–29, PageID #6–7; *see* ECF No. 1-3, PageID #157–58.) And DiPaola Masonry performed work in areas covered by collective bargaining agreements. (*Id.*, ¶ 30, PageID #7; *see* ECF No. 1-4.) Then, the ERISA Funds administer the funds contributed by an employer like DiPaola Masonry pursuant to their respective agreements and declarations of trust. (*Id.*, ¶¶ 32–38, PageID #7–8; *see* ECF No. 1-1; ECF No. 1-2.)

Although subject to the Masonry Industry Agreement and various collective bargaining agreements, DiPaola Masonry failed to submit the contribution reporting

forms and to pay fringe benefits, make payroll deductions, and deduct working dues and assessments for July 2024 through November 2024. (*Id.*, ¶¶ 43–45, PageID #9.) Plaintiffs seek interest and liquidated damages for all contributions that Defendants did not timely make for July 2024 through November 2024. (*Id.*, ¶ 42.)

Plaintiffs served Defendants at the latest on February 18, 2026. (ECF No. 18; ECF No. 19; ECF No. 20.) However, Defendants failed to answer, move, defend or otherwise make an appearance. Consequently, the Clerk entered default against Defendants on March 17, 2026. (Order, Mar. 17, 2026; *see* ECF No. 21.) On April 13, 2026, Plaintiffs moved for a default judgment. (ECF No. 22.)

The Court granted Plaintiffs' motion and ordered an audit of Defendants' books and records to be completed by June 26, 2026. (ECF No. 23.) Plaintiffs were directed to file a supplemental motion for default judgment by July 24, 2026. (*Id.*) On July 23, 2026, Plaintiffs filed a motion for attorneys' fees and costs (ECF No. 24) and a motion to find Defendant Giovanni DiPaola in contempt (ECF No. 25). In these motions, Plaintiffs outlined the efforts taken to elicit compliance from Defendants and Defendants repeated refusal to submit to an audit. (*Id.*) On August 20, 2026, the parties appeared before the Court, and Defendants produced the requested records. (ECF No. 27.) Plaintiffs requested 60 days to complete the audit, and the Court directed Plaintiffs to provide a report or an amended motion for default judgment no later than October 19, 2026. (*Id.*) The Court denied the contempt motion. (*Id.*)

On October 13, 2026, Plaintiffs filed an amended motion for default judgment and damages based on the audit. (ECF No. 28.)

## ANALYSIS

### I. Damages

Under 29 U.S.C. § 1132(g)(2), a court may award unpaid contributions and interest on the unpaid contributions in any ERISA action.

When a defendant is in default, well pleaded allegations in the complaint are taken as true as to liability, but not as to damages. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006) (citing *Visioneering Constr. v. U.S Fid. & Guar.*, 661 F.2d 119, 124 (6th Cir. 1981)); *National Satellite Sports, Inc. v. Mosley Ent. Inc.*, No. 01-CV-74510, 2002 WL 1303039, at *3 (E.D. Mich. May 21, 2002) (noting that the allegations of the complaint regarding the amount of damages suffered are not controlling) (citations omitted). "[T]he civil rules 'require that the party moving for a default judgment must present some evidence of its damages.'" *IBEW Local Union 82 v. Union Lighting Prot.*, No. 3:11-CV-208, 2012 WL 554573, at *1 (S.D. Ohio Feb. 21, 2012) (quoting *Mill's Pride, L.P. v. W.D. Miller Enters.,* No. 2:07-cv-990, 2010 WL 987167, at *1 (S.D. Ohio Mar. 12, 2010)).

Rule 55(b)(2) permits, but does not require, the district court to conduct an evidentiary hearing to determine damages. *Arthur v. Robert James & Assocs. Asset Mgmt., Inc.*, No. 3:11-cv-460, 2012 WL 1122892, at *1 (S.D. Ohio Apr. 3, 2012) (citing *Vesligaj v. Peterson*, 331 F. App'x. 351, 354–55 (6th Cir. 2009)). The Court may rely on affidavits the plaintiff submits in support of damages without the need for a hearing. *Id.* at *2 (citations omitted).

Plaintiffs request $38,652.10 in fringe benefits, interest, and liquidated damages found due and owing to the ERISA Funds as a result of the payroll audit. (ECF No. 28, PageID #421.) According to the supporting affidavit of Jonathan W. Sobel, Defendants owe ERISA Funds "contributions in the amount of $27,647.10, liquidated damages in the amount of $1,382.36, and interest in the amount of $9,622.64." (ECF No. 28-2, ¶ 9, PageID #439.)

Separately, Plaintiffs request $11,636.44 for working dues and assessment, and various payroll deductions, liquidated damages, and interest from Union Funds. (ECF No. 28, PageID #422-23.) For Union Funds, the affidavit shows that Defendants owe "working dues and assessments, and various payroll deductions in the amount of $8,327.28, liquidated damages in the amount of $416.40, and interest in the amount of $2,892.76." (ECF No. 28-2, ¶ 10, PageID #439.)

Plaintiffs submitted an audit report that includes a breakdown of fringe benefits due, liquidated damages, and interest accrued. (ECF No. 28-4, PageID #444.) The report establishes fund contribution totals for the period of January 1, 2024 through July 31, 2026 by category (i.e., IU pension, vacation, local dues) with the liquidated damages and interest due for each category. (*Id.*) The audit report does not distinguish between contributions owed for ERISA Funds from contributions owed for Union Funds. However, simple math shows that the total damages owed in Mr. Sobel's affidavit matches the total damages owed in the audit report—$50,288.54.

Because the affidavit and the audit report establish the damages that Plaintiff incurred and provide a reasonable basis for an award on the claim for fringe benefits, liquidated damages, and interest, the record supports and award of $50,288.54.

## II. Attorneys' Fees and Costs

Under ERISA, Defendant must pay Plaintiffs' reasonable attorneys' fees and costs of this enforcement action. 29 U.S.C. § 1132(g)(2)(D). To determine reasonable attorneys' fees, a district court "begins by determining 'the fee applicant's lodestar, which is the proven number of hours reasonably expended on the case by an attorney, multiplied by his court-ascertained reasonable hourly rate.'" *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821 (6th Cir. 2013) (quoting *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000)). To prove that the fees claimed are reasonable, the requesting party must provide "evidence supporting the hours worked and rates claimed." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1208 (6th Cir. 1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

In determining a reasonable rate, the Court may also consider the awards in analogous cases, *see Johnson v. Connecticut Gen. Life Ins., Co.*, No. 5:07-cv-167, 2008 WL 697639, at *5 (N.D. Ohio Mar. 13, 2008), and its own knowledge and experience from handling similar requests for fees, *see Ousley v. General Motors Ret. Program for Salaried Emps.*, 496 F. Supp. 2d 845, 850 (S.D. Ohio 2006) (citing *Coulter v. Tennessee*, 805 F.2d 146, 149–50 (6th Cir. 1986)). Attorneys' fees should be "documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Ferrara v.*

*CMR Contracting, LLC*, 848 F. Supp. 2d 304, 313 (E.D.N.Y. 2012) (quoting *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 172 (2d Cir. 1998)).

Plaintiffs request $25,652.54 for costs, attorneys' fees, and associated payroll audit fees. (ECF No. 28, PageID #423.) Specifically, Plaintiffs request $23,812.29 for legal fees "relating to collection efforts against Defendants." (ECF No. 28-2, ¶ 19, PageID #441.) Additionally, Plaintiffs were billed $1,840.25 for costs in the case. (*Id.*, ¶ 20, PageID #441.) To support their request for fees and costs, Plaintiffs provide an affidavit outlining the rates that partners and associates charge for litigation and non-litigation matters. (*Id.*, ¶ 18, PageID #440–41.) The affidavit breaks down the partner and the associate rates as follows. (*Id.*)

**Associates:**

| | |
|---|---|
| Non-Litigation Prior to 1/1/2026: | **$211.15** per hour |
| Non-Litigation Post 1/1/2026: | **$217.48** per hour |
| Litigation Prior to 1/1/2026: | **$257.50** per hour |
| Litigation Post 1/1/2026: | **$265.23** per hour |

**Partners:**

| | |
|---|---|
| Non-Litigation Prior to 1/1/2026: | **$231.75** per hour |
| Non-Litigation Post 1/1/2026: | **$238.70** per hour |
| Litigation Prior to 1/1/2026: | **$283.25** per hour |
| Litigation Post 1/1/2026: | **$291.75** per hour |

Similarly situated courts have approved rates between $225 and $280 per hour for attorney work in the context of ERISA collection cases. *Local Union No. 5 Trs. of*

*the Bricklayers & Masons' v. Masonry Contr. Corp.*, No. 1:19-cv-1273, 2021 U.S. Dist. LEXIS 12816, at *32 (N.D. Ohio Jan. 25, 2021); *Bd. of Trs. of the Ohio Laborers' Fringe Benefits Programs v. Freisthler Paving, Inc.*, No. 218-cv-1463, 2019 U.S. Dist. LEXIS 148393, at *6–7 (S.D. Ohio Aug. 30, 2019); *Bds. of Trs. of the Ohio Laborers' Fringe Benefits Programs v. LA Williams Constr., LLC*, No. 2:16-cv-00304, 2017 U.S. Dist. LEXIS 103200, at *8–10 (S.D. Ohio July 5, 2017).

Plaintiffs also provide an invoice from Faulkner, Hoffman & Phillips, LLC detailing the professional services rendered, including date, attorney initials, hours spent, amount charged, and a short summary of the tasks performed. (ECF No. 28-5, PageID #445–58.) The Court is satisfied that Plaintiffs provide sufficient lodestar information as required for an award of fees. Plaintiffs submitted an affidavit detailing attorney rates with an accompanying invoice that identifies the attorneys who worked on the matter, the number of hours each attorney billed, the amount each attorney charged, the total balance, and the nature of the work. Based on the record as a whole and the Court's experience, Plaintiffs' rates and total hours worked are reasonable.

As for costs, the affidavit and accompanying invoice show entitlement to an award of $1,840.25. The invoice provides the date, summary of the reason for the charge (i.e., postage expense), the quantity, the price per item, and the total charge. (ECF No. 28-5, PageID #455–57.) However, Plaintiffs request $1,280.00 for "audit costs." (ECF No. 28-1, PageID #433.) In support of this request, Plaintiffs point to the affidavit of Jonathan W. Sobel, which simply states that "DiPaola Masonry also

owes $1,280.00 in audit costs." (Sobel Aff., ECF No. 28-2, ¶ 11, PageID #439.) Plaintiffs fail to substantiate this amount properly. They provide no receipt or other breakdown of costs associated with performing the audit. Accordingly, the Court awards Plaintiffs $25,652.54 in reasonable attorneys' fees and costs and denies Plaintiffs request for $1,280.00 in audit costs.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' amended motion for default judgment (ECF No. 28). Accordingly, the Court **DENIES** Plaintiffs $1,280.00 in audit costs and **AWARDS** Plaintiffs $50,288.54 in fringe benefits, liquidated damages, and interest and $25,652.54 in reasonable attorneys' fees and costs, for a total award of $75,941.08.

**SO ORDERED.**

Dated: October 22, 2026

J. Philip Calabrese
United States District Judge
Northern District of Ohio